Filed 9/30/25  Keck v. Odaseva.com CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARIC KECK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ODASEVA.COM, INC.,<br><br>    Defendant and Respondent. | A171528<br><br>(City & County of San Francisco Super. Ct. No. CGC23607528) |

Plaintiff Aric Keck appeals a judgment confirming an arbitration award in favor of defendant Odaseva.com, Inc. (Odaseva).  He contends the trial court erred in denying his motion to withdraw his claims from arbitration because Odaseva did not pay the arbitration fees in a timely manner as required by Code of Civil Procedure section 1281.98.[1]  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Odaseva brought a demand for arbitration with the American Arbitration Association (AAA) on May 6, 2022.  According to the demand and accompanying documents, Keck accepted a position with Odaseva as a vice president for sales in April 2021.  The offer letter included an agreement providing for mandatory arbitration of any disputes relating to or arising out

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

1

of Keck's employment. In the arbitration demand, Odaseva alleged it had paid Keck a recoverable draw, but he did not repay it through earned commissions. Keck submitted a counterclaim asserting that when his employment ended, Odaseva fraudulently induced him to return a portion of a $10,000 " 'welcome bonus.' " An evidentiary hearing was set for July 18, 2023.

On June 8, 2023, AAA sent a request that Odaseva pay $50,000 as an arbitrator compensation deposit, stating that payment was due upon receipt and that under section 1281.98, payment must be received within 30 days of the date of the letter. Odaseva's counsel sent AAA an email a few days later, pointing out that the hearing was scheduled for only a single day and asking AAA to provide an accounting of a previous deposit respondent had paid and to let counsel know the basis for the deposit request. On June 20, AAA responded that the arbitrator had revised his deposit estimate and that "[y]ou will be receiving a new invoice for $23,400." An invoice of the same date asked Odaseva to remit $23,400 as the arbitrator compensation deposit. The accompanying letter instructed the parties to "disregard the deposit request dated June 8, 2023" and informed them that AAA must receive the deposit within 30 days pursuant to section 1281.98. Odaseva paid the requested deposit on July 18, 2023. There seems to be no dispute that the arbitration hearing went forward as scheduled the same day, although Keck did not appear.

In the meantime, Keck filed this action against Odaseva on July 10, 2023, asserting causes of action for breach of contract and fraud, based on allegations that Odaseva wrongfully had Keck return his " 'welcome bonus' " and failed to tender arbitration fees in a timely fashion.

2

Keck filed a motion to withdraw his claims from arbitration on August 9, 2023, on the ground Odaseva breached the arbitration agreement by failing to deposit arbitration fees within 30 days of the initial invoice. The trial court denied the motion, finding that there was no breach because Odaseva timely paid the second invoice after AAA cancelled the initial invoice.

The trial court entered judgment on August 1, 2024, confirming an arbitration award in Odaseva's favor. This timely appeal ensued.

## DISCUSSION

Keck contends the trial court erred in denying his motion to withdraw his claims from arbitration because, he asserts, section 1281.98 creates a bright-line rule that prohibits an arbitrator from unilaterally resetting the deadline for paying arbitration fees. The pertinent facts are not in dispute and the question before us is one of statutory construction; accordingly, we review this issue de novo. (See *Anoke v. Twitter, Inc.* (2024) 105 Cal.App.5th 153, 158 (*Anoke*); *Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686.)

Section 1281.98, subdivision (a)(1) requires the party who drafts an employer or consumer agreement (in circumstances the parties do not dispute are present here) to pay arbitration fees during the pendency of an arbitration within 30 days after the due date; a party who fails to do so "is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee . . . to proceed with that arbitration as a result of the material breach." Any extension of time must be agreed upon by all the parties. (§ 1281.98, subd. (a)(2).) If an employer is in default under these provisions, the employee may elect to withdraw the claim

3

from arbitration and proceed in a court of appropriate jurisdiction.
(§ 1281.98, subd. (b)(1).)

The result of this statute—and of the lack of an agreement between the parties for an extension of the due date—Keck contends, is that Odaseva was required to pay the fees within 30 days of the June 8, 2023 invoice, regardless of the fact that AAA issued a new invoice, for a different amount and with a new stated deadline, 12 days later and told Odaseva to disregard the original invoice. For this proposition, he relies on a series of cases holding that an arbitrator lacks authority to adjust the 30-day period for payment of arbitration fees.

In *Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 361 (*Doe*), overruled in part by *Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310, 349 (*Hohenshelt*), for instance, a different panel of this division stated, "Once the due date has been set, there is no provision in section 1281.98 which contemplates any extension of the statutory 30-day grace period. Therefore, once AAA set the due date as September 1—the day it e-mailed the relevant invoice to the parties—and triggered the 30-day grace period, it had no authority to alter the due date absent the parties' agreement." Similarly, in *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 776 (*Espinoza*), overruled in part by *Hohenshelt*, at p. 349, the appellate court explained that even if nonpayment was inadvertent, the plain language of an analogous provision applicable to initial arbitration fees (§ 1281.97, subd. (a)), must be "strictly applied whenever a drafting party failed to pay by the statutory deadline." (See *Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1077 (*Cvejic*) [courts analyze §§ 1281.97 and 1281.98 similarly].) Courts came to the similar conclusions in *De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 752–753, overruled in part by *Hohenshelt*, at p. 349, which

4

applied a bright-line interpretation of section 1281.98 even where there was no delay or prejudice, and *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1074 (*Williams*), overruled in part by *Hohenshelt*, at p. 349, which said that "nothing in section 1281.98 as drafted depends on the intent or good faith of a particular drafting party in a specific case."

The problem with Keck's reliance on these cases is that after briefing in this matter was complete, our high court overruled them, at least in part.[2] The question in *Hohenshelt* was whether the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) preempts section 1281.98. (*Hohenshelt, supra*, 18 Cal.5th at pp. 322–323.) Arbitration proceedings between an employer and employee had been proceeding for approximately a year when, before the final hearing, the arbitrator issued invoices to the employer in July 2022, and again in August of the same year. (*Id.* at p. 324.) The invoices were not paid within 30 days; the employee filed a motion seeking to withdraw from the arbitration; and in objection, the employer explained that the late payment did not cause any delays or burdens, and that it was the result of inadvertence. (*Id.* at pp. 324–325.)

The issue before the high court in *Hohenshelt* arose from provisions of the FAA that were designed to prevent courts from refusing to enforce arbitration agreements, and instead to place them " ' " 'upon the same footing as other contracts.' " ' " (*Hohenshelt, supra*, 18 Cal.5th at p. 327.) In

---

[2] We invited the parties to submit supplemental briefing on the effect of *Hohenshelt* on this case. Only Keck did so by the due date, September 8, 2025. Odaseva submitted an untimely brief on September 15, 2025, which was received but not filed. We received a declaration from Nationwide Legal Services explaining the late submission but no request from Odaseva for leave to file the late-submitted brief. We have not relied on Odaseva's supplemental brief in deciding this case in its favor.

furtherance of this goal, Section 2 of the FAA establishes "a general rule that 'renders agreements to arbitrate enforceable as a matter of federal law.' " (*Hohenshelt*, at p. 327.)  However, such an agreement may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract . . ." (9 U.S.C. § 2; see *Hohenshelt*, at p. 327.)  But it may not be invalidated based on " ' "legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' " ' " (*Hohenshelt*, at p. 341.)

The *Hohenshelt* court explained that the purpose of section 1281.98's rules for the payment of arbitration fees was to provide remedies for employees or consumers who could be caught in " ' " 'procedural limbo and delay' " ' " by a business that demanded arbitration but stalled the proceedings by refusing to pay the required fees.  (*Hohenshelt*, *supra*, 18 Cal.5th at p. 329.)  The employer in *Hohenshelt* contended that section 1281.98 treated arbitration agreements more strictly than other contracts, and thus violated the FAA's mandate of equal treatment.  (*Id.* at p. 331.)  It supported this argument with citations to the case law construing the statute as imposing an "inflexible rule that deems any failure to make timely payment a material breach, regardless of circumstances, with the automatic consequence that the drafting party loses its arbitral rights." (*Ibid.*, citing *Doe*, *supra*, 95 Cal.App.5th at p. 357, *Espinoza*, *supra*, 83 Cal.App.5th at pp. 775–777, and *Williams*, *supra*, 86 Cal.App.5th at p. 1074.)

Our high court rejected this construction of section 1281.98, declining to view the language of the statute in isolation and instead construing it in the context of other statutes authorizing courts to "prevent unjust forfeitures of contractual rights." (*Hohenshelt*, *supra*, 18 Cal.5th at p. 332.)  For example, although as a general matter a party may be discharged from the

duty to perform a contractual obligation by another party's " 'material breach of the contract,' " Civil Code section 3275 establishes an equitable exception that a party may be relieved from forfeiture by making full compensation " 'except in case of a grossly negligent, willful, or fraudulent breach of duty.' " (*Hohenshelt*, at p. 332.) The court also pointed to section 473, subdivision (b), which authorizes relief from an order taken through mistake, inadvertence, surprise, or excusable neglect, and Civil Code section 1511, which provides that a failure to perform an obligation may be excused for various reasons (which include that a debtor is induced not to perform by an act of a creditor). (*Hohenshelt*, at pp. 333–335.)

Seeking to harmonize all of these statutes, the high court considered whether there was a clear indication that the Legislature intended section 1281.98 "to limit the ordinary operation of section 473[, subdivision] (b) or Civil Code sections 3275 and 1511" (*Hohenshelt*, *supra*, 18 Cal.5th at p. 335), and concluded there was not. In enacting section 1281.98, the Legislature was concerned about *willful* nonpayment of arbitration fees—that is "manipulative or intentional delay"—preventing employees and consumers from having their claims resolved in arbitration. (*Hohenshelt*, at p. 337.) The Legislature, the court concluded, "in enacting a 'strict yet reasonable method' to ensure timely payment of arbitration fees [citation]" did not "intend[] that *any* instance of nonpayment by the drafting party, regardless of the circumstances, would result in loss of its right to arbitration." (*Id.* at p. 340.)

Thus, construed properly, section 1281.98 is not preempted by the FAA because it does not disfavor agreements to arbitrate as compared to other contracts. (*Hohenshelt*, *supra*, 18 Cal.5th at p. 342.) If the drafting party willfully withholds fees needed to proceed with arbitration, the other party's duty to arbitrate is discharged; but "if the drafting party acted in good faith,

7

it may seek relief under the above statutes, and its claim should be evaluated under the usual principles in law and equity governing relief from forfeiture or default, including whether the other party has been prejudiced." (*Id*. at p. 344; see *id*. at p. 346.)

*Hohenshelt* does not directly answer the question we are considering—whether Odaseva was obliged to pay the arbitration fees within 30 days of the June 8 invoice *even after AAA instructed Odaseva to disregard it and issued a new invoice for a different amount with a 30-day grace period*. But it does guide our analysis. The court in *Hohenshelt* made clear that section 1281.98 is to be construed with an eye toward the problem the Legislature sought to address—employers and companies intentionally and manipulatively withholding payment in order to delay arbitration. (*Hohenshelt*, *supra*, 18 Cal.5th at pp. 337–338.) There is no concern for such gamesmanship here, where Odaseva acted promptly to challenge the amount of an invoice, AAA responded promptly by withdrawing the original invoice and issuing a new invoice for a lesser amount, Odaseva paid the new bill within 30 days, and the arbitration proceeded as scheduled.

Keck urges that AAA's actions in effect acted as an extension of the due date of the original invoice in violation of section 1281.98, but we disagree. When Odaseva challenged the original bill as excessive, AAA after investigation withdrew it. At that point, which occurred sooner than 30 days after the original invoice issued, the invoice was no longer due, and Odaseva was not obliged to pay the $50,000 it demanded.

Those facts distinguish this case from *Cvejic*, upon which Keck relies. The employer there failed to pay arbitration fees without explanation, and the arbitrator set a new deadline for payment. (*Cvejic*, *supra*, 92 Cal.App.5th at p. 1075.) This procedure was improper, the appellate court concluded:

"The statute does not empower an arbitrator to cure a party's missed payment." (*Id*. at p. 1078.) Here, on the other hand, there was no missed payment.

In its turn, Odaseva draws our attention to *Anoke*, *supra*, 105 Cal.App.5th 153, which is of some, although limited, use here. The arbitrator there emailed an invoice, and counsel for the *employees*—the nondrafting party—mistakenly paid the fee, after which the invoice was marked " '[p]aid' " and " '[c]losed' " on the arbitrator's online portal. (*Id*. at p. 157.) The employees' counsel realized the mistake and notified the arbitrator, which issued a refund. The arbitrator then informed the parties the original invoice had been " 'nulled' " and provided a second invoice, which the employer paid within 30 days. (*Ibid*.) Our colleagues in Division Five concluded that, although the employer did not pay within 30 days of the initial invoice, there was no violation of section 1281.98. Because the wrong party paid the initial invoice, "there were two invoices, two due dates, and two payments," both within the statutory grace period. (*Anoke*, at p. 159.) And even if the arbitrator could have reinstated the first invoice, the statute did not *require* it to do so. (*Id*. at p. 160.) Rather, "a mistaken payment resulted in a second invoice, which is consistent with ordinary business billing practices." (*Id*. at p. 161.) Although *Anoke* is not on all fours with the case before us, in that the original invoice there was in fact paid, albeit by the wrong party, it provides some support for a conclusion that AAA's action in cancelling an erroneous invoice and issuing a new one, for a different amount and with a new due date within the course of its business practices, cancelled rather than extended Odaseva's obligation to make payment within 30 days of the original invoice.

In his brief addressing the effect of *Hohenshelt*, Keck suggests that at the least he is entitled to a determination of whether he is owed compensatory damages for Odaseva's failure to pay the June 8 invoice within 30 days, a failure that he argues constituted a material breach of the arbitration agreement. But our analysis leads us to conclude that Odaseva did not default on its payment obligations, and accordingly its actions were not a material breach of the agreement.

We thus conclude the trial court did not err in denying Keck's motion to withdraw his claims from arbitration on this ground. We need not reach Odaseva's alternative arguments that section 1281.98 does not apply because Keck voluntarily chose to arbitrate his dispute and that his claims are barred by waiver and estoppel.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.


TUCHER, P. J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*Keck v. Odaseva.com, Inc.* (A171528)

10